**Joseph N. GLOVER**

v.

**SOUTH CENTRAL BELL TELEPHONE COMPANY.**

**Civ. A. No. 78–2117.**

United States District Court,
E. D. Louisiana,
New Orleans Division.

July 16, 1980.

---

James J. Morrison, Jr., New Orleans, La., for plaintiff.

Charles G. Rivet, New Orleans, La., for defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

BEER, District Judge.

*Findings of Fact*

1. Plaintiff, Joseph N. Glover, was initially employed by Bell on February 21, 1972, as a lineman in the company's division known as the Westbank Construction Group.

2. Glover voluntarily resigned his employment with Bell on June 7, 1972, and was, thereafter, reemployed on October 30, 1972, as a lineman in the Gentilly Construction Group.

3. As a new employee, Glover underwent orientation regarding Bell's general personnel policy, security matters, employee fringe benefits, and was furnished a booklet, among others, regarding Bell's "Plan for Employees' Pensions, Disability Benefits and Death Benefits."

4. While in the course and scope of his employment as a lineman, Glover was struck and injured by an automobile on July 10, 1973, and sustained lacerations of the scalp, a fracture of the left femur, and alleged aggravation of a preexisting degenerative spine condition.

5. As a result of the accident on July 10, 1973, Bell paid Glover disability benefits at the rate of $186.45 per week during the period from July 11, 1973, through October 9, 1973; such payments included temporary total disability benefits under the Louisiana Workmen's Compensation Act at the rate of $65.00 per week and Accident Disability Benefits under the Plan at the rate of $121.45 per week. Pursuant to paragraph 27 of Section 8 of the Plan, such workmen's compensation benefits were coordinated with, and offset against, the amount of accident disability benefits prescribed in the Plan.

6. Thereafter, as a result of the accident, Bell paid Glover disability benefits at the rate of $93.22 per week during the period from October 10, 1973, through May 30, 1977; such payments included temporary total disability benefits under the Louisiana Workmen's Compensation Act at the rate of $65.00 per week and Accident Disability Benefits under the Plan at the rate of $28.22 per week. Pursuant to paragraph 27 of Section 8 of the Plan, such workmen's compensation benefits were coordinated with, and offset against, the amount of accident disability benefits prescribed in the Plan.

7. Bell discontinued the payment of Accident Disability Benefits under the Plan on May 31, 1977, and continued the payments of temporary total disability benefits, under the Louisiana Workmen's Compensation Act, at the rate of $65.00 per week. These payments continue and are current.

8. Dr. Robert E. Ruel, a board-certified orthopedic surgeon, has been Glover's treating physician since July 10, 1973. On January 18, 1977, Dr. Ruel discharged Glover as "maximally medically rehabilitated" with a residual disability rating of "10% permanent physical impairment of the left lower extremity as a result of Femural fracture" and a "15% permanent physical impairment as a result of degenerative disc syndrome of L–5–S–1 disc space. . . ." In the interim period, Dr. Ruel had reached these conclusions:

(a) On May 28, 1974, Dr. Ruel released Glover for work with the following restrictions: no lifting, no climbing, no squatting, no prolonged sitting.

(b) On June 28, 1974, Dr. Ruel reported that Glover could function at a desk job which did not require prolonged sitting.

(c) On July 10, 1974, Dr. Ruel reported that Glover was capable of working at a desk job provided he could get up and move about frequently.

(d) On November 18, 1974, Dr. Ruel reported that Glover could return to a job which did not require lifting anything greater than 25 pounds or prolonged sitting.

(e) On June 10, 1975, Dr. Ruel reported that he had advised Glover to "return to some form of meaningful employment" with the same restrictions as listed in his report of November 18, 1974.

(f) On June 30, 1975, Dr. Ruel reported that Glover could return to work in a light duty capacity and that riding to and from work would have no adverse effect on his present condition.

(g) On January 13, 1977, Dr. Ruel reported that Glover was disabled from performing the duties of a lineman and that Glover was preoccupied with his condition and "in fact dwells on it."

(h) On February 2, 1977, Dr. Ruel reported that Glover had been discharged on January 18, 1977, as "maximally medically rehabilitated."

9. On April 21, 1975, Dr. Daniel J. Trahant, a neurologist, conducted EMG and nerve conduction studies relative to Glover's lower extremities; such studies were interpreted by Dr. Trahant as normal.

10. On February 16, 1977, Dr. Theodore J. Borgman, Jr., Bell's medical consultant in Louisiana, recommended that Glover should return to work in a job capacity with the following restrictions: no pulling or lifting beyond 15–20 pounds, no climbing, no prolonged sitting, and no prolonged standing.

11. Though requested to return to work on December 18, 1974 (for work commencing on December 23, 1974), and, again, on August 5, 1975 (for work commencing the next week), and, finally, on May 26, 1977 (for work commencing on May 31, 1977), Glover never returned to work at Bell since his accident on July 10, 1973.

12. Bell is a self-insurer under the Louisiana Workmen's Compensation Act; Bell is not a commercial insurer or engaged in the business of insurance. Bell has adopted a "Plan for Employees' Pensions, Disability Benefits and Death Benefits" to cover disability payments. The Plan pertains to Bell employees in Alabama, Tennessee, Kentucky, Mississippi and Louisiana.

13. Bell's Louisiana Benefit Committee met on June 27, 1977, and concurred in the recommendation of its secretary that Glover's application for continuation of accident disability benefits be denied and that the payment of workmen's compensation benefits be continued.

14. Thereafter, the Louisiana Benefit Committee forwarded its recommendation to the secretary of the Employees' Benefit Committee of South Central Bell.

15. That recommendation included the report of Dr. T. J. Borgman, Jr., Bell's medical consultant in Louisiana, recommending that Glover should be returned to work in a job capacity with the following

restrictions: no pulling or lifting beyond 15–20 pounds, no climbing, no prolonged sitting and no prolonged standing.

16. South Central Bell's Employees' Benefit Committee met on August 9, 1977, considered the matter and, thereafter, concurred in the recommendation of the Louisiana Benefit Committee. Thereupon, the committee notified Glover, by certified mail, of its determination and advised him of his right to appeal such determination to the Employees' Benefit Claim Review Committee within 60 days from August 9, 1977.

17. Glover did not appeal the Employees' Benefit Committee's decision to the Employees' Benefit Claim Review Committee.

18. South Central Bell's Employee Benefit Committee has consistently administered the Accident Disability Plan in such a manner as to disallow benefit payments based upon total disability where the injured employee has become physically able to work in a company job where such company work is available to such employee.

19. In May, 1977, the position of "construction clerk" was made available to Glover and that job could have been performed by him within the limitations that the doctors prescribed or, at any event, altered in such ways as may be necessary to accommodate him. Notwithstanding Bell's assurances of this and in spite of the fact that Bell has contacted Glover on several occasions requesting that he report for work as a "construction clerk," Glover has not reported for work and, accordingly, Glover has, for all intents and purposes, abandoned the proffered job.

*Conclusions of Law*

1. The offset of workmen's compensation benefits against the amount of Accident Disability Benefits prescribed in the Plan were authorized. *Killebrew v. Abbott Laboratories,* .352 So.2d 332 (La. App.4th Cir., 1977), affirmed 359 So.2d 1275 (La.1978).

2. Insofar as the proffered job of "construction clerk" is concerned, the Employees' Benefit Committee's findings and

conclusions are supported by credible evidence and are not unreasonable, arbitrary, capricious or in bad faith.

3. Accordingly, this court has no valid basis upon which to either set aside or reverse those findings and conclusions and they must be permitted to stand. *Davis v. Humble Oil & Refining Co.,* 283 So.2d 783 (La.App.1st Cir., 1973).

Counsel for defendant shall prepare and submit a proposed judgment consistent with these findings and conclusions.