Joseph N. GLOVER, Plaintiff-Appellant,

v.

SOUTH CENTRAL BELL TELEPHONE COMPANY, Defendant-Appellee.

No. 80–3656

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

May 14, 1981.

James J. Morrison, Jr., New Orleans, La., for plaintiff-appellant.

Charles G. Rivet, New Orleans, La., for defendant-appellee.

Before BROWN, POLITZ and TATE, Circuit Judges.

TATE, Circuit Judge:

In this removed diversity action, the plaintiff Glover sues his former employer

("Bell") to recover for total disability benefits under Bell's private disability pension plan. The district court dismissed the suit. 492 F.Supp. 1032 (E.D.La. 1980). On appeal, Glover contends that the trial court erred as a matter of fact and law in upholding the employer's benefit committee's termination of total disability benefits, as well as in its allowing offset against contractual disability benefits to the amount of workmen's compensation benefits paid under state law. We affirm, finding no error of law and that the committee's denial of further contractual total disability benefits was supported by credible evidence and was not arbitrary, capricious, or in bad faith.

*Facts*

Glover was employed by Bell as a telephone lineman. Under the terms of the employer Bell's "Plan for Employees Pensions, Disability Benefits, and Death Benefits," Bell employees were entitled to receive accidental disability benefits "on account of physical disability to work by reason of accidental injury ... arising out of and in the course of employment." Section 5, Paragraph 1. By reason of the state compensation law, employees injured at work are likewise entitled to receive certain payments. (An issue on this appeal, as noted, is whether the compensation benefits received independently of the contract may be used to offset or reduce contractual benefits.)

Glover suffered accidental injuries at work in 1973. From 1973 until during 1977, Glover was paid total disability benefits as provided by the private disability plan, less the weekly workmen's compensation payment ($65.00) paid by Bell (as self-insured employer) to Glover under the compensation law. After the contractual benefits terminated in 1977, Bell continued to pay Glover his weekly compensation.

There is no dispute that Glover is now, and has been since his accident, incapable of performing the duties of a telephone line-

man.[1] Nevertheless, since May 28, 1974, Glover's treating physician has consistently reported that he was capable of returning to work in a "light duty" capacity that did not involve climbing or squatting, prolonged sitting or standing, or the lifting or pulling of objects weighing more than fifteen pounds. On February 2, 1977, Glover's physician reported that he had been discharged as "maximally medically rehabilitated."

On three occasions—December 18, 1974, August 5, 1975, and May 26, 1977—Glover was offered a clerical position with assurances that Bell would adjust the duties to fit his restricted capabilities. On each occasion, Glover refused to return to work. The medical evaluations indicate that Glover was medically and physically capable of performing the clerical duties involved in the job that was offered to him, and that travel to and from the job site would have no adverse impact upon his medical condition.

Throughout his absence from work, Glover was receiving the temporary total disability benefits provided under Louisiana's Workmen's Compensation Act, La.R.S. 23:1021 et seq., as well as total disability benefits under Bell's private Accident Disability Pension Plan. As stated, workmen's compensation benefits were offset against the private plan benefits.

On June 27, 1977, Bell's state benefit committee for Louisiana recommended that Glover's application for continued disability benefits under the private plan be denied. That recommendation was concurred in by Bell's Employees' Benefit Committee ("the Committee") on August 9, 1977, and the benefits were denied. Glover was informed of the Committee's decision and of his right to appeal that decision to a review committee, but he did not pursue an appeal.

On June 12, 1978, Glover brought this action to recover both the discontinued total disability benefits and the amount by which

---

1. Unconflicting medical evaluations from several sources indicate that the appellant, Joseph Glover, suffers a ten to fifteen percent permanent partial impairment of function in the low-er left extremity as the result of a broken femur and a ten to fifteen percent partial impairment of function of the body as a whole as the result of injuries to his back.

those benefits had been reduced under the offset provisions of the plan.

From the adverse decision of the district court, Glover now brings this appeal.

*The Denial of Benefits*

Under the terms of the plan,[2] the Committee (or its delegate state benefit committees) is empowered to grant or deny claims for benefits and to determine conclusively for all concerned (subject to the designated appeal rights) any and all questions arising in the administration of the plan.

Pursuant to that authority, the state benefit committee for Louisiana recommended denial of Glover's application for continuation of total disability benefits under the plan. This recommendation was based on the state committee's conclusion that Glover's claim of total disability did not meet the contractual requirement of "physical disability to work by reason of accidental injury." The evidence leading to that conclusion consisted of medical reports from several sources indicating a ten to fifteen percent partial impairment of physical function, medical recommendations that Glover be returned to active employment on a light duty basis, and Glover's refusal of employment geared to his disability.

The state committee's recommendation was concurred in by the Committee, "since no evidence as to physical disability to work by reason of accidental injury was established." The total disability benefits were discontinued.

The district court, upon reviewing the Committee's action in the light of the evidence adduced at trial, concluded that the evidence before the Committee was sufficient to decide the plaintiff's claim, and that the action taken was not arbitrary, capricious, or in bad faith; on that ground, the court held that there was no valid basis upon which to set aside or reverse the Committee's determination.

█ Insofar as Glover's entitlement to total disability benefits under the plan is concerned, we would agree with the district court that the plaintiff has not established cause for a court to disturb the denial of total disability benefits by the Committee.[3]

█ The limited scope of judicial review of the decisions of a committee administering a private pension plan recognized by Louisiana jurisprudence is in accord with the general rule elsewhere: The committee's determination is conclusive so long as the evidence before the committee was sufficient to decide the plaintiff's claim and the committee's action was not arbitrary, capricious, or in bad faith. *Davis v. Humble Oil & Refining Co.*, 283 So.2d 783, 793 (La.App. 1st Cir. 1973). *See also Golden v. Kentile Floors, Inc.*, 512 F.2d 838, 847 (5th Cir. 1975); *Marsh v. Greyhound Lines, Inc.*, 488 F.2d 278, 288 (5th Cir. 1974); *Matthews v. Swift and Company*, 465 F.2d 814, 818 (5th Cir. 1972).

---

2. *See* Plan for Employees' Pensions, Disability Benefits and Death Benefits (SDB Exhibit No. 8, hereinafter cited as the Plan):

> The Committee, and State Benefit Committees to the extent such authority has been delegated, shall grant or deny claims for benefits under the Plan and authorize disbursements according to these Regulations. Adequate notice, pursuant to applicable law and prescribed Company practices, shall be provided in writing to any participant or beneficiary whose claim has been denied, setting forth the specific reasons for each denial. Plan, Section 3, Paragraph 2e.

> The Employees' Benefit Committee, or the Review Committee when it reviews a denial of a claim, shall determine conclusively for all parties all questions arising in the administration of the Plan.

*Id.* Paragraph 4.

3. Glover has not alleged any entitlement to the partial disability benefits provided for in the Plan, Section 5, Paragraphs 2e–2d, 3, either on this appeal or in the district court. Those paragraphs provide for the payment of benefits to a partially disabled employee that are equivalent to all or a portion of the difference between the employee's full pay at the time the partial disability is declared and the wages which in the Committee's judgment the employee is capable of earning. Since Glover has not raised this issue, and since it does not appear that the Committee considered it, we restrict our opinion to the question of Glover's entitlement to total disability payments.

The plaintiff Glover argues that the Committee's denial was arbitrary and capricious, (a) procedurally, because the Committee met without his presence and decided on the basis of documentary exhibits, the Committee itself being composed solely of employer executives. Glover further contends (b) that the Committee denial was substantively arbitrary, and in bad faith, because the Committee erroneously rejected the plaintiff's attempted showing that he could not, in fact, perform the clerical duties offered him.

■ With regard to (a), the Committee acted in its capacity as the administering entity under the plan, according to procedures established by the plan. Those procedures included immediate notice of adverse Committee action (with specific reasons for the action taken) and of the employee's further right to administratively appeal that action to a Review Committee (an administrative remedy not exercised by Glover). These procedures further provided ample opportunity for the employee to present his claim in its most favorable light before any adverse Committee action became final. We are unable to find merit in Glover's complaint that the Committee procedures (resulting from a plan evolving through the collective bargaining process) were procedurally unreasonable, arbitrary, or capricious.

With regard to the substantive (or (b)) contention, the narrow question addressed and resolved by the Committee in this case was whether Glover was totally disabled within the meaning of the plan so as to be entitled to the total disability benefits provided therein. The term "total disability" is nowhere expressly defined in the plan.

■ Glover first argues that the district court should have given that contractual term the meaning given it by the courts of Louisiana in workmen's compensation and insurance cases—i. e., that an employee is totally disabled when he is unable to substantially perform all of the material acts of his particular job in the usual and customary way. We do not agree. The words of a contract are to be given their common and usual signification, La.Civ.C. art. 1946, and the provisions of a contract are to be read in context so as to give effect to all the provisions of the agreement, id. art. 1955. As used in the workmen's compensation and insurance contexts, the term "totally disability" is a term of art; to engraft that specializing meaning onto the agreement here at issue would deviate from the common and usual signification of the words, and would leave the plan's provisions for partial disability benefits (fifty percent of the difference between full pay and the wages that a partially disabled employee "is capable of earning" (Plan, Section 5, Paragraph 2c) with little contractual function.

■ The record in this case shows consistent and frequent medical reports from several sources, all stating unequivocally that Glover's physical impairment is partial rather than total, that Glover was and is capable of returning to work in a particularly-defined "light duty" capacity, and that Bell had offered him a position in keeping with the limitations of his partial disability. We find this evidence more than sufficient to support as not arbitrary or capricious the Committee's determination that Glover was not "totally disabled" within the meaning of the plan.

Nor do we find, after examination of the record, any evidence tending to establish an inference that the Committee otherwise acted arbitrarily, capriciously, or in bad faith. There is no indication that Bell treated other similarly situated employees differently, imposed any unreasonable requirements upon Glover, refused to consider evidence favorable to the claim, or in any way grossly erred in its exercise of judgment. Furthermore, there is nothing in the circumstances surrounding this case to commend the use of a procedural presumption such as that described in *Golden v. Kentile Floors, Inc., supra*, 512 F.2d at 849, in order to shift onto Bell the burden of going forward with exculpatory evidence.[4]

---

4. Glover challenges the district court's finding, 492 F.Supp. at 1035, that the Committee consistently administered the plan so as to disallow total disability benefits where the injured

For these reasons, we conclude there is no valid basis for judicial interference with the Committee's decision to deny continuation of total disability benefits under the plan.

### The Offset of Workmen's Compensation Benefits

The offset of workmen's compensation benefits against the private plan disability benefits was fully authorized under the terms of the plan.[5] The plan expressly states that any benefits payable under law that are determined by the Committee to be of the same general character as the benefits provided by the plan may be deducted from the private plan payments.[6] Further, it is quite clear that the Committee (or its delegate state committee) has in fact made the determination that workmen's compensation benefits are of the same general character as the plan's disability benefits. See SCB Exhibit No. 1, p. 5; R.I: 185–86.

Nevertheless, Glover contends that the two types of benefits are not of the same general character. In support of this contention, Glover focuses upon the subrogation provisions of the state Workmen's Compensation Act, La.R.S. 23:1162. That statute, Glover points out, entitles Bell to subrogation for the repayment of the full amount of its workmen's compensation payments out of any award Glover might obtain against a third party. Yet, since Bell has offset those payments against the benefits paid out under the disability pension plan, such recovery would result in the avoidance by Bell of $65 per week in the disability payments called for under the plan.

■ Glover's position does have a certain appeal. But the fact remains that the agreement Glover here seeks to enforce specifically provides that the Committee may offset payments it determines to be of the same general character as the benefits due under the plan. The Committee has determined that workmen's compensation disability benefits are indeed of the same general character as the plan's disability benefits. Nothing in the evidence or in Glover's arguments provides a valid basis for judicial interference with that determination. Certainly, the Committee's determination that these two kinds of payments—each designed to protect the injured employee from a loss of income resulting from a job-related accident—are of the same general character can hardly be said to constitute the grossly mistaken judgment that would justify judicial intervention. See Golden v. Kentile Floors, Inc., 512 F.2d at 847.

The offset provisions of the plan reflect the contractual intent of the parties to this agreement that benefits such as workmen's compensation disability payments are to be offset against the maximum benefits payable under the plan. That the legislature of Louisiana has determined in its wisdom that an injured employee should not recover both in tort and under the Workmen's Compensation Act is immaterial to the contractual agreement that is in issue here. The contractual agreement—that the contractu-

---

employee has become physically able to work in a company job and such a job is made available to him. In the context of the issues presented on this appeal, that finding of fact is not necessary to the conclusion that the Committee did not act arbitrarily, in the absence of any showing that other disabled employees were *not* denied total disability benefits because of their refusal to attempt lighter work within the company for which they were qualified. The district court's finding was based on an inference from testimony of Bell's policy to find clerical assignments for disabled employees (Mehaffey, R.II, 63–64, 70–71, cf. 66–67).

5. As Bell points out, clauses of this nature that coordinate workmen's compensation and other wage-loss benefits for the same job-related dis-

ability are common and have been generally upheld by the courts. Larson, The Law of Workmen's Compensation §§ 97.00, 97.10, 97.-50 (1952).

6. *See* Plan, Section 8, Paragraph 27:

In case any benefit or pension, which the Committee shall determine to be of the same general character as a payment provided by the Plan, shall be payable under any law now in force or hereafter enacted to any employee of the Company, to his beneficiaries or to his annuitant under such law, the excess only, if any, of the amount prescribed in the Plan above the amount of such payment prescribed by law shall be payable under the Plan * * *.

al disability benefits are to be reduced by payments for disability statutorily due to the employee independent of the employer's contractual obligation—is not unconscionable or prohibited by law. *See Killbrew v. Abbott Laboratories*, 352 So.2d 332, 335–36 (La.App. 4th Cir. 1977), *aff'd*, 359 So.2d 1275, 1278 (La.1978). The agreement is binding on the parties to the contract and to this dispute.

There being no valid basis for judicial interference with the committee action taken pursuant to the offset provisions of the plan, that action must stand.

*Conclusion*

For the reasons stated above, we conclude that the Committee's decision to deny continuation of total disability benefits under the private plan was supported by ample evidence and was not arbitrary, capricious, or in bad faith, and that the offset of workmen's compensation benefits was contractually authorized by an enforceable provision. We hold, therefore, that there is no valid basis for judicial interference with the Committee action taken in this case.

The judgment of the court below is AFFIRMED.

AFFIRMED.