**John KOLATA; Marvin Welch; Leon Marcum; Earl Barker; William Maynard; and Paul Riffe, individually and on behalf of all others similarly situated; Plaintiffs,**

v.

**UNITED MINE WORKERS OF AMERICA 1974 PENSION TRUST; John J. O'Connell; Harrison Combs; and Paul R. Dean, Trustees of the United Mine Workers of America Pension Trust; Defendants.**

**Civ. A. No. 80–3277.**

United States District Court,
S. D. West Virginia,
Huntington Division.

Feb. 19, 1982.

James M. Cagle, Larry Harless, Charleston, W. Va., for plaintiffs.

Cindy Turko, Charleston, W. Va., E. Calvin Golumbic, William Hanrahan, Jeanne K. Beck, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER

STAKER, District Judge.

Presently before the court is the defendants' motion for summary judgment. The named plaintiffs herein seek to prosecute this action in their own behalf and as a class action as representatives of all retired coal miners similarly situated. Although the court has not yet ruled on the plaintiffs' motion for class certification, the plaintiff and the class they propose to represent may be described as retired coal miners who: (1) involuntarily retired prior to reaching age fifty-five (55) due to illness or injury; (2) have ten (10) or more years of signatory service as members of the United Mine Workers Association (UMWA); (3) are now fifty-five years old or older; (4) have been awarded Deferred Vested Pensions from the defendant 1974 UMWA Pension Trust.

The defendant 1974 UMWA Pension Trust was established pursuant to the provisions of the 1974 UMWA Pension Plan (1974 Plan). The 1974 Plan was incorporated by reference and made a part of the 1974 National Bituminous Coal Wage Agreement (1974 Contract) entered into by the Bituminous Coal Operators Association (BCOA) and the UMWA. In 1978, the UMWA and the BCOA renegotiated their contract which resulted in some changes to the Pension Plan. None of those changes are relevant to the issues involved in this action.[1]

The plaintiffs cause of action arises under Section 502 of the Employee Retirement Income Security Act of 1974 (ERISA) 29 U.S.C. § 1132(e) and Section 302(c), (e) of the Labor Management Relations Act of 1947, 29 U.S.C. § 186(c), (e) and upon 28 U.S.C. § 2201 as it pertains to declaratory judgment.

The plaintiffs herein claim that the defendant-trustees have breached their fiduciary duty to the trust beneficiaries by interpreting, arbitrarily and capriciously, a particular provision of the 1974 Plan and a corresponding provision of the 1974 Contract so that the plaintiffs are now receiving Deferred Vested Pensions instead of Age 55 Pensions, resulting in substantial economic injury. Plaintiffs seek damages for past benefits wrongfully withheld; i.e., the difference between the amount received under the Deferred Vested Pension and the amount receivable under the Age 55 Pension. Also, plaintiffs pray for declaratory and injunctive relief asking that the court enjoin defendants from continuing to award Deferred Vested Pensions to those UMWA members who cease working prior to age 55 due to illness or injury and declare that such UMWA members are entitled to Age 55 Pensions pursuant to the terms of the 1974 Plan. The plaintiffs are likewise aggrieved by a regulation promulgated by the trustees in accordance with and in furtherance of their interpretation of the aforementioned provisions of the 1974 Plan and the 1974 Contract. It perhaps would be more accurate to state that it is the plaintiffs' exclusion from the group which this regulation is intended to benefit that gives rise to this lawsuit.

The authority of the trustees to promulgate such regulations is found in Article 8(B) of the 1974 Plan.[2] The regulations issued by the trustees in this case have taken the form of "Questions and Answers" (Q&A's) in which a hypothetical factual situation concerning pension eligibility is posed followed by an explanation of how such a situation would be resolved under the Plan. It is one such regulation, Q & A P–5, which is at the core of this dispute.

---

1. The term "1974 Plan" will hereinafter refer to that Pension Plan as originally adopted in 1974 and as later amended in 1978. Likewise the term "1974 Contract" will refer to both the 1974 and 1978 Coal Wage Agreements.

2. Article VIII Miscellaneous
   (B) General

   (1) The trustees are authorized to promulgate rules and regulations to implement this plan and those rules and regulations shall be binding upon all persons dealing with and participants claiming benefits under this plan.

This regulation will be discussed in greater detail below.

To illustrate clearly the context in which this dispute arises, it is necessary to describe briefly the 1974 Plan and the options available to retirees thereunder. Under the terms of the 1974 Plan, there are three types of pensions available to participants who meet the respective eligibility requirements: (1) Age 62 Retirement Pension (2) Age 55 Retirement Pension; (3) Deferred Vested Pension. In order to qualify for the Age 62 Pension, a participant must reach the age of 62 prior to retirement. Likewise, in order to qualify for an Age 55 Pension, a participant must reach the age of 55 prior to retirement. According to Article II E of the Plan, a participant who is ineligible for the preceding two pensions may receive only a Deferred Vested Pension. It should be noted that benefits under the Deferred Vested Pension are not payable until the participant reaches the age of 55, regardless of his age at retirement.

Article II B of the Plan provides that age 62 shall be considered the "normal retirement age" for purposes of ERISA. Therefore, the Age 55 Retirement Pension constitutes the "early retirement benefit" referred to in ERISA, 29 U.S.C. § 1056(a).

A fair reading of § 1056(a) indicates that such early retirement benefits are optional at the choice of the drafters of the plan in each case. Therefore, it would follow that the Deferred Vested Pension is optional as well, it being included in the 1974 Plan along with the Age 55 Pension presumably to provide a more attractive plan for the UMWA to consider in the course of contract negotiations.

29 U.S.C. § 1056(a) provides that when a plan contains an early retirement benefit

... A participant who satisfied the service requirements for such early retirement benefit, but separated from the service ... before satisfying the age requirement for such early retirement benefit, is entitled upon satisfaction of such age requirement to receive a benefit not less than the benefit to which he would be entitled at the normal retirement age, *actuarially reduced* under regulations prescribed by the Secretary of the Treasury (emphasis added).

Such actuarial reduction as provided for in § 1056(a) has an effect similar to reducing to present value the sum awardable under an Age 62 Pension, so that, by taking into account interest rates, etc., a Deferred Vested Pension will be economically equivalent to an Age 62 Pension. Stated differently, if an Age 62 pensioner and a Deferred Vested pensioner both received their pensions in lump sums upon the attainment of their age requirements, (62 and 55 respectively) such lump sums being calculated in accordance with life expectancy assumptions, the sum payable to the Deferred Vested pensioner would be greater due to his longer life expectancy. To offset this discrepancy, that sum is reduced actuarially and is then divided by the number of months remaining in the pensioner's life expectancy. It is this figure which will be the Deferred Vested pensioner's monthly pension.

Of obvious importance is the date on which a participant retires because the participant's age at retirement will be determinative of what pension benefits he will be entitled to. The concept of "retirement" is integral to the two disputed provisions of the 1974 Plan and 1974 Contract and the regulation Q & A P–5 promulgated pursuant thereto. Therefore, what constitutes "retirement" under the 1974 Plan must be determined.

Article I(B) of the Plan provides that for purposes of pension eligibility determinations, "retirement" is considered to occur on the last day of "credited service." "Credited service" is defined in Articles I A and IV of the Plan and includes "hours of service." Article I A(7) defines "hours of service" as each hour for which the participant is paid or is entitled to be paid for: (1) duties performed; or (2) a period of time during which no duties are performed due to vacation, *holiday*, illness, etc.

It is important to note at this point that an employee's birthday is recognized as a holiday pursuant to Article XII of the 1974 Contract. Article XII, further provides at section (h):

Holidays for Sick and Injured.

An employee forced to cease work because of injury or personal illness including coal workers' pneumoconiosis, will for one (1) year following such injury or illness be compensated for *all holidays* when due occurring during the following 364 days *provided he establishes medical proof of illness or injury.* (emphasis added)

Taking into consideration the definition of retirement found in the 1974 Plan it can be seen that a participant who retires due to injury or personal illness after his 54th birthday may be eligible for an Age 55 Retirement Pension although he ceases work prior to becoming 55 years old. For example, if an employee became seriously ill or was permanently injured at some point after his 54th birthday and was unable to return to work, it would follow that on his 55th birthday, such employee would be entitled to holiday pay (as per Article XII(h) of the 1974 Contract) because his birthday falls within the one-year period following his forced absence from work for which he is compensated for all holidays. Accordingly, that employee's birthday would be a day of "credited service." in that it is a period for which he is entitled to be paid. Because "retirement" does not occur until the last day of credited service, the employee will not be deemed to have retired until on, or perhaps after his 55th birthday. Consequently, such an employee would be entitled to the Age 55 Retirement Pension as opposed to the Deferred Vested Pension, although he ceased working prior to his 55th birthday.

The hypothetical situation outlined above was apparently a common occurrence in the coal industry resulting in Age 55 Pensions being awarded to those miners who could establish that their cessation of work after age 54 (but before age 55) was due to illness or injury. Presumably to relieve the employee of the burden of affirmatively proving his illness or injury and consequently relieve the trust administrators from investigating every such case, the trustees promulgated Q & A P–5. This regulation established a presumption that any employee who retired between ages 54 and 55 did so involuntarily due to illness or injury and thus entitled such employee to an Age 55 Pension. It would seem that this presumption is premised on the notion that few employees will retire voluntarily or otherwise leave work intentionally when they are within one-year of becoming eligible for an Age 55 Retirement Pension.

This presumption of involuntary retirement was made rebuttable by a showing that the employee clearly *intended* to leave his employment, voluntarily prior to reaching age 55. The presumption would thus be rebutted by evidence indicating that the employee left work for other employment or that the employee had been discharged for cause. (See Appendix for text of Q & A P–5).

Accordingly, when the presumption of retirement due to illness or injury is rebutted the retiree is not entitled to the one-year period of holiday benefits and as such his last day of "credited service" will occur after his 54th birthday but before his 55th birthday. Therefore, such an employee will be deemed to retire before age 55 and as such will be eligible only for a Deferred Vested Pension.

The gravamen of the plaintiffs' case is that the provisions of the 1974 Plan and the 1974 Contract which deal with Deferred Vested Pensions should be construed so as to apply only to those who *voluntarily* leave their employment prior to age 55. In essence, what the plaintiffs seek is an expansion of Q & A P–5 to allow all miners who retire involuntarily before age 55 to be presumed as having intended to continue employment until age 55 and so become eligible for an Age 55 Pension.

Plaintiffs apparently misunderstand the application of Q & A P–5. Such an expansion of the presumption contained in Q & A P–5 would be contrary to its raison d'être,

its apparent purpose being to facilitate the handling of pension claims for those miners who are forced to leave work between ages 54 and 55 due to illness or injury. Pursuant to the terms of the 1974 Plan, such miners are *unquestionably* entitled to the Age 55 Retirement Pension because their retirement is not effected until after their 55th birthday. Contrary to plaintiffs' position this presumption is not premised on the fiction that such miners actually *intended* to work until age 55. Although they may have so intended, this intent is irrelevant. Q & A P–5 merely allows injured or ill miners who leave work between ages 54 and 55 to forego the necessity of *proving* their disability in order to receive the Age 55 Pension to which they are entitled.

Notwithstanding plaintiffs' dissatisfaction with the limited application of Q & A P–5, it is further asserted that the provisions dealing with Deferred Vested Pensions in the 1974 Plan and the 1974 Contract exclude the plaintiffs and proposed class from coverage thereunder and require that plaintiffs be awarded Age 55 pensions.

Plaintiffs herein claim that but for the arbitrary and capricious interpretation by the trustees of Article XX(7) of the 1974 Contract and Article II E of the 1974 Plan, the plaintiffs would be entitled to receive Age 55 Pensions which provide greater monthly benefits than are available under Deferred Vested Pension.

Article XX(7) of the 1974 Contract provides with regard to Deferred Vested Pensions:

> If after the effective date of this Agreement *a working miner terminates employment for any reason* after completing at least 10 years of signatory employment, and before age 55, the miner will be eligible to receive a pension at age 62, or an actuarially reduced pension at any time after 55. This pension will be calculated in accordance with (3) above. The Surviving Spouse pension described in paragraph (6) does not apply to the surviving spouse of a miner receiving a deferred vested pension with less than 20 years of service. (emphasis added)

Article II E of the 1974 Pension Plan reads as follows:

E. *Deferred Vested Retirement*

> *Any participant* not eligible to receive a pension under any other provision of this Article II *whose employment* in a classified job with an Employer *is terminated* after December 31, 1975, *for any reason* and who at the time of retirement (or, if later, at the time of termination of employment with an Employer) has (a) at least 10 years of signatory service, or (b) at least 20 years of credited service including the required amount of signatory service as set forth in Article IV(C)(6) shall be eligible for a pension (hereinafter "Deferred Vested Pension"), upon attaining age 62, or, at the election of the participant, he shall be eligible for a reduced pension beginning at any time after he attains age 55. At the time of such termination, such participant shall be given an appropriate written notice of his eligibility and other relevant data. (emphasis added)

The use of the word "terminates" in the 1974 Contract and "terminated" in the 1974 Plan forms the basis of plaintiffs' argument that the Deferred Vested Pension provisions should apply only to those miners who voluntarily retire prior to age 55. The choice of such words, plaintiffs contend, evinces an intent by the drafters to make the cessation of employment referred to therein a volitional act on the part of the miner. Such a construction would indicate that these provisions regarding Deferred Vested Pensions were not intended to apply to the plaintiffs or the class they seek to represent herein (i.e., those who left work involuntarily due to illness or injury). At first blush such a contention appears superficially meritorious.

The *American Heritage Dictionary of the English Language* (Houghton Mifflin Co. 1981) defines "terminate" at page 1328 thereof:

> Terminate (v). tr. 1. To bring to an end or halt. 2. To occur at or from the end of; conclude; finish. -intr 1. To come to an end. 2. To have an an end or result.

As can be seen from the definition above, the verb "terminated" can be used in either a transitive or intransitive form. In the relevant language of Article XX(7) of the 1974 Contract, the word is used in its transitive form, to wit: "If . . . a working miner terminates employment for any reason" . . . In this phrase, "terminates" is the transitive verb with "miner" being the subject (or actor) and "employment" being the object (or thing acted upon by the verb). Thus, to that point in the phraseology of the language thereof, there is a suggestion that the miner is the one who is performing the act of termination, which would seem to indicate a volitional act by the miner. However, when the words "for any reason" immediately follow this phrase, as they do in Article XX(7) of the 1974 Contract above quoted, the suggestion of willfulness on the miner's part is not so evident. Absent the prepositional phrase "for any reason," Article XX(7) would indeed connote voluntariness on the miner's part. However inclusion of this phrase militates against such a connotation. This is particularly true when Article XX(7) of the 1974 Contract is considered with reference to Article II E of the 1974 Plan, both of which deal with Deferred Vested Pensions and by their language seek to articulate a common rule with respect thereto.

No ambiguity whatsoever exists with respect to the provisions of Article II E of the 1974 Plan. The pertinent language there is "Any participant . . . whose employment . . . is terminated . . . for any reason . . ." In this instance "is terminated" is an intransitive verb, the subject being "employment." So phrased there is clearly no connotation of voluntariness on the part of (in this case) the "participant," who is thus restrictively defined.

Moreover, while Article XX(7) of the 1974 Contract might arguably be said to suggest voluntary retirement by its terms, any doubt as to this issue is resolved by the unambiguous language of Article II E of the 1974 Plan. The court has noted previously that the 1974 Plan was drafted pursuant to the 1974 Contract. As such, it is obvious that the 1974 Plan was intended to be a more precise and elaborate description of the Pension Plan than that found in the Contract and resolve any ambiguities that might be contained therein. Because Article II E clearly does not limit the application of the Deferred Vested Pension to those who retired voluntarily, it must be presumed that Article XX(7) of the 1974 Contract did not contemplate such an application placed on them. Based upon the foregoing, there is little, if any, reason to believe that Article II(7) of the 1974 Contract and Article II E of the 1974 Plan were intended to restrict Deferred Vested Pensions to only those miners who voluntarily left their jobs, as plaintiffs' contend. Accordingly, the two provisions, that in the Contract and that in the Plan, remain totally compatible given the construction placed on them by the trustees and the court herein. The plaintiffs' argument that Article XX(7) of the 1974 Contract and Article II E of the 1974 Plan were intended to grant Deferred Vested Pensions *only* to those miners who retired voluntarily must fail for another, more fundamental reason.

Assuming that the two disputed provisions regarding Deferred Vested Pensions were, in fact, applied only to those who voluntarily retired, as plaintiffs contend, plaintiffs would find themselves totally unprovided for in both the 1974 Plan and the 1974 Contract, because clearly the plain and unambiguous terms of the Age 62 Pension would exclude all those who retired involuntarily prior to age 54 and *nothing* can be found in the language of the Age 55 Pension which would entitle the plaintiffs to that Pension. It is only through a misunderstanding of the purpose of Q & A P–5 that the plaintiffs claim entitlement to Age 55 Pension benefits.

■ Having thus construed the disputed language in the 1974 Contract and the 1974 Plan, the court must now determine whether or not the defendants are entitled to summary judgment. It is well settled that the judicial role in reviewing trustees' decisions on eligibility for pension plans is limited to determining whether the trustees' de-

cision was made arbitrarily, capriciously or in bad faith. *Palino v. Casey*, 664 F.2d 854 (1st Cir. 1981); *Wyper v. Providence Washington Ins. Co.*, 533 F.2d 57 (2nd Cir. 1981); *Kiser v. Huge*, 517 F.2d 1237 (D.C.Cir.1974); *Horn v. Mullins*, 650 F.2d 35 (4th Cir. 1981); *Glover v. South Central Bell*, 644 F.2d 1155 (5th Cir. 1981).

The same standard is applicable when courts are asked to review trustees' interpretations of pension plan provisions, *Riley v. MEBA Pension Trust*, 570 F.2d 406 (2nd Cir. 1977); *Beam v. Int'l Org. of Masters, Mates and Pilots*, 511 F.2d 975 (2nd Cir. 1975); *Gordon v. I. L. W. U.–PMA Ben. Funds*, 616 F.2d 433 (9th Cir. 1980); *Snyder v. Titus*, 513 F.Supp. 926 (E.D.Va.1981). With this standard of review in mind, the court, upon motion for summary judgment, must determine if there is any genuine issue as to any material fact, the resolution of which would preponderate for or against a finding that the trustees interpretation of the 1974 Plan was made arbitrarily, capriciously or in bad faith.

The court is of the opinion that the facts of this case are clear and indeed would be subject to stipulation had the parties chosen to do so and that no disparate inferences could be reasonably drawn therefrom. The depositions of the trustees and the exhibits filed herein reveal no genuine issue as to any material fact. The series of circumstances and events leading up to the adoption of Q & A P–5 are not in dispute and the plaintiffs point to no evidence in the record which would indicate an arbitrary or capricious motive on the part of the trustees. It would appear that the only dispute in this case is the ultimate issue to be resolved herein and that question is for the court. *Wardle v. Central States, Southeast and Southwest Areas Pension Fund*, 627 F.2d 820 (7th Cir. 1980), *cert. denied*, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841; cf. *Calamia v. Spivey*, 632 F.2d 1235 (5th Cir. 1980) (No right to jury trial in actions against pension fund administrators).

■ For reasons stated hereinabove, the court is of the opinion that the expansion of Q & A P–5 as urged by the plaintiffs is not reasonable in light of the purpose sought to be served by that regulation. Therefore, by refusing to broaden the scope of that regulation, the trustees acted neither arbitrarily nor capriciously, but rather quite reasonably. Furthermore, after considering the construction sought to be given to Article XX(7) of the 1974 Contract and Article II E of the 1974 Plan by the plaintiffs, the court finds that the language contained therein does not warrant such a construction. Awarding plaintiffs Deferred Vested Pensions is in keeping with the plain and unambiguous language of the relevant provisions of the 1974 Contract and the 1974 Plan. As noted earlier, acceptance of plaintiffs' construction of these two provisions would result in the anomalous situation of the plaintiffs being altogether unprovided for by the Pension Plan, absent a gross and tortious misinterpretation and expansion of Q & A P–5.

Having found that there is no genuine issue as to any material fact and having further found the trustees to have interpreted the 1974 Contract and 1974 Plan reasonably and in accordance with the plain language of each, the court is of the opinion that the defendant 1974 UMWA Pension Trust and the defendant trustees are entitled to judgment as a matter of law.

For the foregoing reasons it is hereby ORDERED that summary judgment be entered for the defendants and that this action be stricken from this court's docket.

### APPENDIX

Subject: PENSION BENEFITS; Deferred Vested  P–5
Reference: (74P) II E, Appendix A  (May 1, 1979)

*Question* : The 1974 Pension Plan provides that service-eligible Participants whose signatory classified employment is "terminated for any reason" prior to age 55 shall be eligible for a Deferred Vested Pension at age 62, or at Participant's election, for an actuarially reduced pension at any time after age 55.

Are there any circumstances in which a Participant who ceases work in a classified job for a signatory Employer prior to age 55 can qualify for an Age 55 pension?

*Answer*: In general, a Participant who ceases classified signatory work between ages 54 and 55 may be presumed as not intending to terminate employment prior to age 55 and may be authorized an Age 55 pension unless there is some clear indication of actual or intended formal termination of employment. But that presumption is a rebuttable presumption, i.e., the facts in a particular case will govern. Examples of termination of employment include resignation, discharge, or other circumstances showing a clear intention to terminate employment.

Participants who cease working in a classified signatory job prior to age 54 can qualify only for a Deferred Vested pension which will be calculated under Appendix A of the 1974 Pension Plan.